*In re* RAMON

Docket No. 175825. Submitted December 21, 1994, at Lansing. Decided February 7, 1995, at 9:05 A.M. Leave to appeal sought.

In February 1991, the Eaton Circuit Court, Thomas S. Eveland, J., entered a judgment in a paternity action declaring Mark A. Pena to be the father of Alexander M. Ramon, ordering Pena to pay support and the expenses of childbirth, awarding Pena visitation rights, and granting care, custody, and control of the child to Lisa Ramon, the mother. Lisa subsequently died in an automobile accident, and the Eaton County Probate Court, James L. Theophelis, J., appointed as temporary guardians of the child Bernie and Narcisa Ramon, the child's maternal grandparents. Pena sought in the Eaton Circuit Court a change in custody of the child pursuant to the court's continuing jurisdiction in the paternity action. The Ramons responded to Pena's petition and filed their own petition for sole care, custody, and control of their grandson. On November 3, 1993, the probate court entered an "Order for Temporary Court Structured Guardianship Plan," which made the Ramons guardians of the child and imposed certain obligations on Pena. Following the November 29, 1993, amendment of the Child Custody Act that expanded the class of persons eligible to bring a custody action to include grandparents, MCL 722.26c(1); MSA 25.312(6c)(1), the Ramons filed a motion in the circuit court that it assume jurisdiction of the proceedings, that it award them custody of the child, and that it order an investigation by the friend of the court concerning their suitability for custody of the child. Because of the existing guardianship proceeding in the probate court, Judge Theophelis was assigned pursuant to MCL 722.26b(5); MSA 25.3121(6b)(5) to serve as a circuit judge to hear the child custody action. Following a hearing, Judge Theophelis determined that the Ramons' guardianship pursuant to the November 3 order of the probate court was tantamount to a statutory limited guardianship pursuant to MCL 700.424a(1); MSA 27.5424(1)(1) and held that because Pena had complied with the requirements of the guardianship plan, the Ramons, pursuant to MCL 722.26b(2); MSA 25.312(6b)(2), lacked standing to bring an action for custody of the child. Judge

Theophelis awarded sole legal and physical custody of the child to Pena. The Ramons appealed.

The Court of Appeals *held:*

A limited guardianship is a creature of statute. MCL 700.424a(1); MSA 27.5424(1)(1) contemplates a guardianship that arises out of a mutual agreement, trust, and cooperation between the limited guardian and the parent or parents of a child. The November 3 order of the probate court did not arise out of any mutual agreement involving trust and reliance between the Ramons and Pena, and Pena did not agree to a voluntary suspension of his parental rights. Accordingly, the circuit court erred in determining that the November 3 guardianship order was a limited guardianship pursuant to MCL 700.424a(1); MSA 27.5424(1)(1) and erred in holding that the Ramons were barred from seeking custody of the child pursuant to the Child Custody Act. The Ramons are entitled to a child custody hearing pursuant to MCL 722.23; MSA 25.312(3).

Reversed and remanded.

*Barry L. Furgason,* for Bernie and Narcisa Ramon.

*Raymond J. Reynolds,* for Mark A. Pena.

Before: FITZGERALD, P.J., and GRIBBS and M. J. TALBOT,* JJ.

PER CURIAM. Bernie and Narcisa Ramon appeal as of right from the order of the Eaton Circuit Court that granted sole legal and physical custody of Alexander Michael Ramon, their grandson, to Mark A. Pena, the child's natural father out of wedlock, upon a finding that they lacked standing to bring an action for custody. We reverse and remand.

According to a paternity complaint filed on January 12, 1990, by the Department of Social Services on behalf of Lisa Ramon, Alexander was born out of wedlock on August 3, 1989, to Lisa and Pena. Pena initially contested paternity, but subse-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

quently acknowledged paternity after blood tests failed to exclude him as the child's father. On February 19, 1991, the circuit court issued a judgment declaring Pena to be the child's father, ordering him to pay support and the expenses of childbirth, awarding him visitation rights, and granting care, custody, and control of the child to Lisa. According to evidence adduced at the February 4, 1994, hearing of the Ramons' custody request, it appears that for approximately the first two years of his young life the child lived with Lisa in the home of her parents, the Ramons, and after that time resided with Lisa in an apartment, although continuing to have close contact with the Ramons.

Unfortunately, Lisa Ramon was killed in an automobile accident on September 14, 1993. The child thereafter resided with the Ramons. Because nobody had legal custody of the child after Lisa's death, on September 23, 1993, the Eaton County Probate Court appointed the Ramons the child's temporary guardians.

On September 29, 1993, Pena moved in the circuit court for a change of custody. On that same date, the circuit court referred the matter to the friend of the court for an investigation regarding Pena's qualifications for caring for the child. The Ramons responded to Pena's custody petition on October 12, 1993, and on that same date petitioned the circuit court for the sole care, custody, and control of the child.

On November 29, 1993, the Child Custody Act, specifically MCL 722.26c(1); MSA 25.312(6c)(1), was amended to expand the class of persons eligible to bring a custody action as follows:

A third person may bring an action for custody of a child if the court finds either of the following:

(a) Both of the following:

(i) The child was placed for adoption with the third person under the adoption laws of this or another state, and the placement order is still in effect at the time the action is filed.

(ii) After the placement, the child has resided with the third person for a minimum of 6 months.

(b) All of the following:

(i) The child's biological parents have never been married to one another.

(ii) The child's parent who has custody of the child dies or is missing and the other parent has not been granted legal custody under court order.

(iii) The third person is related to the child within the fifth degree by marriage, blood, or adoption.

Pursuant to this new legislation, on January 3, 1994, the Ramons filed a motion in the circuit court that it assume jurisdiction over the proceedings, that it award them custody of the child, and that it order a friend of the court investigation of their suitability for the child's custody. Pena replied on January 11, 1994, contesting the Ramons' custody petition. Pena argued that the probate court's November 3, 1993, "Order for Temporary Court Structured Guardianship Plan" was a de facto "limited guardianship placement plan" under MCL 722.26b(2); MSA 25.312(6b)(2), that precluded petitioners from having standing to file the petition for custody. MCL 722.26b(2); MSA 25.312(6b)(2) provides:

A limited guardian of a child does not have standing to bring an action for custody of the child if the parent or parents of the child have substantially complied with a limited guardianship placement plan regarding the child entered into pursuant to section 424a of the revised probate code, Act No. 642 of the Public Acts of 1978, being section 700.424a of the Michigan Compiled Laws.

Probate Judge James L. Theophelis was assigned to serve as a circuit judge to hear the child custody action. MCL 722.26b(5); MSA 25.312(6b)(5). Following a hearing on January 4, 1994, Judge Theophelis determined that petitioners' guardianship was tantamount to a statutory limited guardianship and that the only viable issue was whether Pena had substantially complied with the probate court's temporary guardianship plan. Answering that question affirmatively, Judge Theophelis determined that the Ramons lacked standing under MCL 722.26b(2); MSA 25.312(6b)(2) to contest custody, and awarded sole legal and physical custody of the child to respondent.

The Ramons challenged the circuit court's failure to grant them standing pursuant to § 6c(1)(b) and do not challenge specifically the circuit court's determination that standing was barred by MCL 722.26b(2); MSA 25.312(6b)(2). Pursuant to MCR 7.216(A)(7), we reverse the circuit court's finding that the Ramons were limited guardians whose standing to bring an action for custody was barred by § 6b(2).

A limited guardianship is strictly a creature of statute. MCL 700.424a(1); MSA 27.5424(1)(1) specifies that a limited guardianship must be created as follows:

> Beginning on the effective date of the amendatory act that added section 424b, the court may appoint a limited guardian for an unmarried minor under this section upon the petition of the parent or parents if all of the following are met:
>
> (a) The parents with custody of the minor consent or, in the case of only 1 parent having custody of the minor, the sole parent consents to the appointment of a limited guardian.
>
> (b) The parent or parents voluntarily consent to the suspension of their parental rights.

(c) The court approves a limited guardianship placement plan agreed to by both of the following parties:

(i) The parents with custody of the minor or, in the case of only one parent having custody of the minor, the sole parent who has custody of the minor.

(ii) The person or persons who the court will appoint as limited guardian of the minor.

Clearly, the probate court's November 3, 1993, order did not constitute a *statutory* limited guardianship, because it was not created pursuant to the statute's requirements.[1] The question presented, therefore, is whether Judge Theophelis correctly denied the Ramons standing on the ground that the November 3 order was *tantamount* to a statutory limited guardianship. We find that he did not.

Considering § 424a(1) in pari materia with § 6b(2), it is apparent that the latter section was designed to preclude any possibility of betrayal by a statutory limited guardian appointed pursuant to § 424a. In other words, the crux of § 424a is *mutual* agreement, trust, and cooperation between the limited guardian and the custodial parent(s). In furtherance thereof, the parents consent to the appointment of a limited guardian and to the suspension of their parental rights, and a limited guardianship placement plan is agreed upon by the parents and the proposed limited guardian. If, after following the procedures outlined in § 424a(1), the limited guardian could then utilize the guardianship as a mechanism for attempting to gain custody of the child pursuant to § 6b(1), a parent would be reluctant to agree to a limited guardianship. Consequently, the Legislature wisely provided that a *statutory* limited guardian had

---

[1] This fact is uncontested by both parties and the circuit court.

standing to seek custody of the minor child over whom he had been appointed only if the parent had not complied substantially with a limited guardianship placement plan.

The events culminating in the probate court's November 3, 1993, order granting temporary custody differ significantly from those that typically result in a statutory limited guardianship. Here, the Ramons already had custody of the child, there was no agreement of trust and reliance between the Ramons and Pena, and Pena did not voluntarily consent to suspension of his parental rights in reliance upon a limited guardianship placement plan. Plainly, the factual and philosophical bases upon which the probate court's November 3 order were premised differ fundamentally from the voluntary, cooperative nature of a § 424a(1) limited guardianship. Hence, we cannot say that the Ramons' attempt to gain custody under the Child Custody Act constituted a subversion of a good-faith agreement such as that implicit in a statutory limited guardianship. Judge Theophelis therefore erroneously equated his November 3 order with a § 424a(1) limited guardianship and incorrectly invoked § 6b(2) to bar petitioners' action.[2]

Reversed and remanded to the circuit court for a custodial hearing pursuant to the Child Custody Act, MCL 722.23; MSA 25.312(3).

---

[2] In light of our resolution, we need not determine whether an individual who satisfies the requirements for standing under § 6c(1)(b) can be precluded by § 6b(2) from bringing an action for custody of a child if that individual also happens to be the child's limited guardian.